**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ALI HARWAN ALI BAHARON,

                          *Petitioner,*

          v.

ERIC H. HOLDER, JR., Attorney
General,

                          *Respondent.*

}  No. 08-1700

On Petition for Review of an Order of
the Board of Immigration Appeals.

Argued: September 24, 2009

Decided: November 24, 2009

Before MOTZ and GREGORY, Circuit Judges,
and Damon J. KEITH, Senior Circuit Judge of the
United States Court of Appeals for the Sixth Circuit,
sitting by designation.

Petition for review granted and remanded by published opinion. Judge Gregory wrote the opinion, in which Judge Motz and Senior Judge Keith joined.

## COUNSEL

**ARGUED**: Jason Alexander Dzubow, MENSAH, SHOE-MAKER & DZUBOW, PLLC, Washington, D.C., for Peti-

tioner. Theo Nickerson, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Gregory G. Katsas, Assistant Attorney General, William C. Peachey, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

GREGORY, Circuit Judge:

Ali Harwan Ali Baharon ("Baharon") petitions this Court to review a final removal order by the Board of Immigration Appeals ("BIA") denying his asylum application and ordering him removed to Yemen. Baharon contends that both the BIA and the Immigration Judge ("IJ") erred in finding that he was not subjected to past persecution in Yemen and that he lacked a well-founded fear of future persecution were he to return. We agree that Baharon was subjected to past persecution. We therefore grant his petition for review and remand for the BIA to reconsider whether — in light of Baharon's demonstrated past persecution — he has a well-founded fear of future persecution.

### I.

### A.

Baharon was born in Sanaa, Yemen in 1986. He is Hadrami, an ethnic minority that lives primarily in southern Yemen. As a Hadrami, Baharon testified that he was repeatedly subjected to discrimination that made it difficult for him to get a national identification card, a driver's license, or even go to public school. Along with his brother, father, and uncle, Baharon was active in the Sons of Hadramut ("SOH"), a group that provides services to and advocates on behalf of Hadramis.

On April 8, 2004, Baharon and his brother were leaving the SOH building when they were stopped and arrested by Yemeni police. The police drove them to an unmarked building and placed each in separate cells. Baharon was then subjected to several rounds of increasingly violent interrogation regarding his work for SOH.

During the first round of questioning, Baharon's interrogator threw water on him, accused him of trying to secede from Yemen, and hit him in the face. The officer also asked Baharon several questions about his uncle who had disappeared months earlier. From the questions, Baharon inferred that his uncle had been kidnapped by security officials and was being held for his role in SOH. Hours later, another officer told Baharon that he would get no water during his stay if he did not sign papers implicating his uncle in subversive activities, which Baharon refused to do. The next morning, two officers gave Baharon breakfast and demanded that he talk about his involvement in SOH. When Baharon's answers were not what the officers were looking for, one of them struck Baharon in the face. The other then began beating Baharon with a stick. He first hit Baharon in the back, knocking him to the ground. Once Baharon was on the ground, the officer continued to hit him at least three or four more times. Baharon later described the pain as "excruciating." (J.A. 122.) The beatings left him with several bruises across his back. When Baharon would not confess to secessionist activities, the officer from the previous day returned and told Baharon that if he did not sign inculpatory papers, then he would "disappear." (J.A. 123.) Baharon again refused. The next day, officers returned to Baharon's cell. They told him that if they ever saw Baharon near the SOH building again, he would "be disappeared" and that if he told his family what happened to him, the police would hurt him and his family. (J.A. 123-24.) Baharon was then released. His detention lasted three days.

Once released, Baharon discovered that his brother had been subjected to even harsher treatment. He had been

punched, kicked, dragged, hit with a rifle butt, and threatened with a pistol. At one point, he lost consciousness during the beating. Baharon's brother was told that if he did not talk, he would be killed. The brothers returned home and told their father what happened. This led the father to investigate further what had happened to Baharon's uncle. After determining that the uncle had been kidnapped by security forces, the father paid a five-thousand dollar bribe to secure his release. The uncle had severe injuries, including several broken bones and blood clots in his chest. These injuries required him to be hospitalized for two months.

Baharon remained in Yemen for four months after his detention. During that time, he was monitored by police and did not go back to the SOH building. Baharon and his brother later secured passports and left Yemen for the United States. Since Baharon left, the police have periodically detained his father to ask him where Baharon is and about his own SOH activities.

### B.

Baharon entered the United States on August 5, 2004 as a B-2 nonimmigrant with authorization to remain until February 4, 2005. On August 5, 2005, he was served with a Notice to Appear, charging him with removability pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B) (2006). Baharon conceded removability before the IJ, but requested asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

At the hearing, Baharon described his detention and that of his brother and uncle. He also introduced a 2005 State Department Report, which found that Yemeni "[s]ecurity forces continued to arbitrarily arrest and detain a number of persons with views critical of the government." (J.A. 242.) The report

also stated that police in Yemen "tortured and abused persons in detention." (J.A. 235.)

The IJ determined that Baharon was credible; however, she denied his petition for asylum, withholding of removal, and CAT protection. Specifically, she found that the three-day detention did not amount to past persecution and that Baharon could not establish a well-founded fear of persecution if he returned to Yemen. (J.A. 38.) The BIA adopted and affirmed the IJ's decision and added that Baharon did not establish past-persecution under this Court's decision in *Li v. Gonzales*, 405 F.3d 171 (4th Cir. 2005). (J.A. 2.) Baharon timely appealed the finding that he was ineligible for asylum because he was not subjected to past persecution and lacked a well-founded fear of future persecution.

## II.

We will uphold the BIA's decision that an alien is ineligible for asylum unless the determination is "'manifestly contrary to the law and an abuse of discretion.'" *Li v. Gonzales*, 405 F.3d 171, 175 (4th Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(D)). The BIA's determination regarding asylum eligibility will be reversed only if the evidence is so strong that no reasonable factfinder could agree with its conclusion. *Gonahasa v. INS*, 181 F.3d 538, 541 (4th Cir. 1999). Where, as here, the BIA adopts and affirms the IJ's decision but gives additional reasons for doing so, we review both opinions. *Niang v. Gonzales*, 492 F.3d 505, 511 n.8 (4th Cir. 2007).

## III.

On appeal, Baharon contends that the IJ and BIA erred by limiting their analysis of past persecution to the three days Baharon spent in detention. He argues that both the IJ and BIA should have considered the fear and intimidation to which Baharon was subjected through the threats to his safety and the persecution of his relatives. Had the IJ and BIA done

so here, Baharon insists, they would have found him to be a victim of past persecution and he would have been entitled to a rebuttable presumption of a well-founded fear of future persecution. We agree.

A.

To establish asylum eligibility under the INA, the petitioner must show either that he was subjected to past persecution or that he has a "well-founded" fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion."[1] 8 C.F.R. § 208.13(b)(1) (2009). An alien who establishes past persecution is entitled to a rebuttable presumption that he has a well-founded fear of future persecution. *Id.*

"'Persecution involves the infliction or threat of death, torture, or injury to one's person or freedom, on account of one of the enumerated grounds in the refugee definition.'" *Li v. Gonzales*, 405 F.3d 171, 177 (4th Cir. 2005) (quoting *Kondakova v. Ashcroft*, 383 F.3d 792, 797 (8th Cir. 2004)). A key difference between persecution and less-severe mistreatment is that the former is "systematic" while the latter consists of isolated incidents. *Bocova v. Gonzales*, 412 F.3d 257, 263 (1st Cir. 2005). Violence or threats to one's close relatives is an important factor in deciding whether mistreatment sinks to the level of persecution. *See Lin v. Mukasey*, 517 F.3d 685, 689 (4th Cir. 2008) (describing how Chinese officials threatened to harm in-laws when deciding that petitioner had been subjected to past persecution); *Belbruno v. Ashcroft*, 362 F.3d 272, 284-85 (4th Cir. 2004) (considering the mistreatment to which petitioner's husband and other family members were subjected for the husband's political activities in deciding whether or not petitioner was subjected to past persecution); *Gonahasa v. INS*, 181 F.3d 538, 540 (4th Cir. 1999) (noting

---

[1]The Government apparently concedes that any persecution inflicted on Baharon was due to his pro-Hadrami political opinions.

BIA's finding that petitioner was subjected to past persecution in Uganda where, among other things, police came to his home and beat up his wife while threatening to kill him). This is especially so where the harm inflicted on family members adds immediacy and severity to threats directed at petitioner, making it more reasonable for the petitioner to fear that he will suffer the same fate. *See Gonahasa*, 181 F.3d at 540; *Lolong v. Gonzales*, 484 F.3d 1173, 1178 (9th Cir. 2007) (en banc) (finding that "similarly situated" friends and relatives' treatment is relevant when assessing whether petitioner's fear is well-founded); *Poradisova v. Gonzales*, 420 F.3d 70, 79-81 (2d Cir. 2005) (holding that IJ erred when it did not consider the "cumulative" effect of each family member's persecution on the other and when it failed to consider evidence of what happened to the family's friends as evidence of what might happen to it).

The IJ and BIA erred by reducing Baharon's treatment to a single, three-day detention, despite crediting his testimony as credible. Not only did Yemeni police detain and beat Baharon for his work with SOH causing "excruciating" pain, but they threatened that he would "disappear" and that they would hurt him again if he continued to associate with SOH. The possibility that the threat of disappearance would come true was made all the more likely by the uncle's own disappearance. *Li*'s dictum — referenced by the BIA — that courts "have been reluctant to categorize detentions unaccompanied by severe physical abuse or torture as persecution," 405 F.3d at 177, is inapposite where, as here, detention is one of many incidents that in the aggregate constitute persecution.[2] *See*

---

[2]We also note that our discussion in *Gonahasa* that petitioner was not entitled to asylum under a subsection of the applicable regulation, 8 C.F.R. § 208.13(b)(1)(iii)(A) (2009), has no bearing on this case. We stated in *Gonahasa* that where petitioner established past persecution, but the government rebutted the presumption of a well-founded fear of future persecution, he was not entitled to asylum based on the severity of past persecution alone because § 208.13(b)(1)(iii)(A) was reserved for Holo-

*Gonahasa*, 181 F.3d at 540 (past persecution established by showing that police detained petitioner and then later threatened him and beat his wife); *Poradisova*, 420 F.3d at 79-81. When the Yemeni authorities detained Baharon and then vividly threatened his future safety, they attacked his security and freedom in precisely the way that *Li* found Congress intended the INA to protect against. *See* 405 F.3d at 177 (describing threats that constitute persecution under the statute). Any inference that the police's threat that Baharon would "be disappeared" was idle chatter, which a reasonable factfinder could then ignore, should have been eliminated by the fact that the threatened-conduct actually happened to Baharon's uncle. *See Poradisova*, 420 F.3d at 79-81.

We are acutely aware that our job as a reviewing court is not to reweigh the evidence before the IJ. *Bocova v. Gonzales*, 412 F.3d 257, 264 (1st Cir. 2005). It is, however, our responsibility to ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the factfinder. *See Haoua v. Gonzales*, 472 F.3d 227, 232 (4th Cir. 2007) (IJ's findings must be based on the record and not "speculation and conjecture"). Those who flee persecution and seek refuge under our laws have the right to know that the evidence they present of mis-

---

caust survivors, survivors of the Cambodian genocide, and other extreme cases. *See* 181 F.3d at 544 (quoting *Bucur v. INS*, 109 F.3d 399, 405 (7th Cir. 1997)). Baharon does not contend that he is entitled to asylum based solely on the severity of his persecution. He contends only that he was subjected to past persecution, and that this entitles him to a presumption of a well-founded fear of future persecution under § 208.13(b)(1). Unlike in *Gonahasa*, the Government here has not yet presented evidence sufficient to overcome a finding of past persecution and the resulting presumption of future persecution. Baharon, therefore, need not show that the abuse to which he was subjected was so deplorable "that it would be inhumane" to return him to Yemen, even if he lacked a well-founded fear of future persecution. *Gonahasa*, 181 F.3d at 544. Neither *Gonahasa* nor any other case of which we are aware supports the proposition that one need be a victim of a uniquely sadistic regime to establish past persecution in the first instance.

treatment in their home country will be fairly considered and weighed by those who decide their fate. This did not occur here. Having established in the record that Baharon was subjected to the type of abuse that, on the whole, constitutes persecution, the IJ and BIA were not then free to base their decision on only isolated snippets of that record while disregarding the rest. *See SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) (requiring that "the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained"); *Zuh v. Mukasey*, 547 F.3d 504, 514 (4th Cir. 2008) (reviewing court must "ensur[e] adherence to law, proper support of findings in the record, and the considered and proper exercise of discretion"); *Poradisova*, 420 F.3d at 79-80 (finding that IJ erred by analyzing incidents of persecution established by the record out of context and in isolation). To do so was an abuse of discretion. It is clear to us that had the IJ and BIA properly considered the evidence before them, they would have concluded that the Yemeni police engaged in a "systematic" attack on Baharon's freedom, security, and bodily integrity. *See Bocova*, 412 F.3d at 263. We are therefore compelled to reverse the BIA's determination that Baharon was not subjected to past persecution.

B.

Because we hold that Baharon proved that he was subjected to past persecution in Yemen, he is entitled to the presumption of a well-founded fear of future persecution, which would make him eligible for asylum. 8 C.F.R. § 208.13(b)(1) (2009). We do not decide whether the Government can rebut this presumption, and instead remand to the BIA to reconsider the question under the proper presumption. *See INS v. Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam). Consistent with our above holding, we expect that on remand the BIA and IJ will consider all relevant evidence presented by both parties when deciding whether or not the Government can rebut Baharon's claim.

IV.

For the above reasons, we grant Baharon's petition for review and remand to the BIA to determine whether the Government can overcome the presumption that Baharon has a well-founded fear of future persecution.

*PETITION FOR REVIEW GRANTED AND REMANDED*