**PUBLISHED**

Filed: August 26, 2010

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROSEMARY MIRISAWO,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney General,

*Respondent.*

No. 08-1704

## O R D E R

Petitioner filed a petition for rehearing and rehearing en banc.

A member of the Court requested a poll on the petition for rehearing en banc. Judge Gregory voted to grant rehearing en banc. Chief Judge Traxler, and Judges Wilkinson, Niemeyer, Motz, King, Shedd, Duncan, Agee, Davis, Keenan, and Wynn voted to deny rehearing en banc. Judge Michael did not participate in the vote.

The petition for rehearing is denied, and, because the poll on rehearing en banc failed to produce a majority of judges in active service in favor of rehearing en banc, the petition for rehearing en banc is also denied. Judge Gregory wrote an opinion dissenting from the denial of rehearing and rehearing en banc.

Entered at the direction of Judge Niemeyer for the Court.

For the Court

/s/ Patricia S. Connor
Clerk

GREGORY, Circuit Judge, dissenting from the denial of rehearing and rehearing en banc:

Among the harshest lessons learned from the recent financial crisis is the profound harm done to the individual and to society by the loss of one's home. The loss of a home entails a loss of basic shelter and security. For most Americans, it is a loss of the largest investment they will ever make. It is the loss of years of work intended to ensure a greater future return for one's children. For many, it may even embody the loss of that intangible collection of aspirations that we have come to call the American Dream.

Rosemary Mirisawo did not lose her home in an unforeseen and unintended macroeconomic meltdown. She lost her home when Robert Mugabe's regime in Zimbabwe, as part of "Operation Restore Order," deliberately bulldozed it in retaliation for her family's support of the opposition party, leaving all-but-one room in ruins.

Yet, according to the panel majority, Mirisawo cannot claim that the destruction of her home deprived her of a basic necessity of life, because "Mirisawo had never lived in the house and was living and working in the United States as a live-in housekeeper. Nor is it likely that Mirisawo will ever need to live in the house, as she will likely continue to be employed as a live-in housekeeper if she returns to Zimbabwe." *Mirisawo v. Holder*, 599 F.3d 391, 397 (4th Cir. 2010). Never mind that there is no evidence suggesting that she intended to or would even be allowed to work in someone else's home or reside at someone else's pleasure. And never

mind that the majority acknowledges, at least implicitly, that the purpose and effect of "Operation Restore Order" was to leave political opponents without shelter to protect against torture, rape, and other forms of abuse by government-sponsored militias. *See id.* at 394 & 397. Because Mirisawo was once a live-in maid, the majority suggests, she cannot aspire to an independent calling.

Likewise, the majority dismisses the continuing harm that not having a home inflicts on Mirisawo and her family. We view harm done to a petitioner's close relatives as "an important factor in deciding whether mistreatment sinks to the level of persecution." *Baharon v. Holder*, 588 F.3d 228, 232 (4th Cir. 2009). Yet not only does the majority brush aside the beating received by Mirisawo's brother at the hands of government officials, but it also claims that after having their home destroyed, Mirisawo's brother and children "continued to live in Zimbabwe without further incident." *Mirisawo*, 599 F.3d at 398. In doing so, the majority ignores the fact that living without a home is a continuing and profound injury, in and of itself. This Circuit's tolerance for the oppression of some people is disheartening.

One of the biggest challenges that administrative judges and reviewing courts typically face when evaluating persecution claims is how foreign the applicant's experience often is to our own reality. The pain and despair that come from being held incommunicado or being tortured in a prison camp, for example, differ so starkly from the average American experience that it can make the standard by which we judge whether an applicant suffers from a "well-founded fear of future persecution," 8 C.F.R. § 208.13(b), inaccessible. We can easily see, though, the pain that comes when a person loses her home. And if we choose to do so, it is not difficult to extrapolate the desperate fear that results when that loss is caused by the deliberate and violent actions of one's own government.

We hardly need newspaper accounts or State Department Reports to understand how Rosemary Mirisawo must feel

about her impending return to the rubble where her home once stood in Zimbabwe. We need only look to ourselves.

I respectfully dissent.