**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-2067**

MARCIO LOPEZ-ORELLANA,

Petitioner,

v.

MATTHEW G. WHITAKER, Acting Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: September 25, 2018                    Decided: December 19, 2018

Before KING and KEENAN, Circuit Judges, and John A. GIBNEY, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

Petition for review granted in part, denied in part; vacated and remanded by unpublished opinion. Judge Gibney wrote the opinion, in which Judge King and Judge Keenan joined.

**ARGUED:** Jennifer Lynn Cervantes, CERVANTES & CERVANTES, PLC, Fredericksburg, Virginia, for Petitioner. Robert Michael Stalzer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Juan V. Cervantes, CERVANTES & CERVANTES, PLC, Fredericksburg, Virginia, for Petitioner. Chad A. Readler, Acting Assistant Attorney General, Stephen J. Flynn, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

GIBNEY, District Judge:

Marcio Lopez-Orellana faced multiple targeted death threats at the hands of a rival family in his native Honduras. Yet the Board of Immigration Appeals ("BIA") affirmed an Immigration Judge's ("IJ") finding that he did not suffer past persecution in Honduras and thus did not qualify for asylum. Because we hold that Lopez did suffer past persecution, the IJ and BIA should have afforded him the rebuttable presumption of a well-founded fear of future persecution. For the reasons that follow, we grant in part and deny in part the petition for review, vacate the BIA's order, and remand to the BIA for further proceedings.

I.

In 2005, a land dispute arose between Lopez's uncle, Martar Orellana, and Martar's neighbors, the Hernandez family. The dispute escalated, and the Hernandez family attacked Martar with a machete, amputating both of his arms. In 2007, the Hernandez family shot and killed Lopez's father because he had been investigating the attack on Martar.

In early 2012, Jorge and Felipe Hernandez, while armed, threatened to kill Lopez. Jorge and Felipe claimed that Lopez wanted to "take vengeance" against them for his father's death. J.A. 137. Lopez tried to convince Jorge and Felipe that he did not want to avenge his father's death, but they pursued him nonetheless. Lopez escaped uninjured. Shortly thereafter, other members of the Hernandez family fired shots at Lopez. He injured his arm while trying to escape.

3

Feeling unsafe in his hometown, Lopez moved to San Marcos, Honduras. Because people from Lopez's hometown often visited San Marcos, Lopez still worried that the Hernandez family would find him. He then moved to San Pedro Sula, Honduras, where two of his sisters lived. After experiencing two unrelated assaults in San Pedro Sula, Lopez traveled to the United States in July, 2012.

After arriving in the United States, Lopez continued to receive reports of violence that the Hernandez family perpetrated against his family. For example, the Hernandez family fired shots at his mother's house with his mother and sisters inside. They later shot Lopez's brother and another uncle, leaving his uncle paralyzed.

Immigration officials detained Lopez at the border, where he filed an application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). Lopez appeared before an IJ, who found his testimony "detailed, plausible, and consistent with the asylum application and with known country conditions." J.A. 140.

Nonetheless, the IJ denied Lopez's applications. First, the IJ found Lopez ineligible for asylum. Noting "the lack of any physical harm" to Lopez, the IJ held that Lopez did not suffer past persecution in Honduras. J.A. 141. Based on the IJ's holding regarding past persecution, the IJ required Lopez "to show that internal relocation is not reasonably available to him." J.A. 142. The IJ concluded that Lopez failed to show that he could not relocate in Honduras. Further, the IJ found that Lopez suffered harm "as a result of a land dispute," but not persecution "on account of his family membership." J.A. 141. Second, the IJ held that Lopez did not meet the higher standard of proof required for withholding

4

of removal. Finally, the IJ denied relief under the CAT because Lopez did not show that he suffered torture in Honduras.

Lopez appealed to the BIA, and the BIA affirmed the IJ's decision. The BIA agreed that Lopez did not suffer past persecution based on "the absence of physical harm." J.A. 3. Because the BIA affirmed the IJ's finding that Lopez did not establish past persecution, the BIA found that Lopez "is not entitled to a rebuttable presumption of a well-founded fear of persecution." J.A. 4. The BIA assumed without deciding that Lopez suffered harm on account of his family membership, but concluded that Lopez could relocate within Honduras to avoid persecution. The BIA further found Lopez ineligible for withholding of removal and denied his request for relief under the CAT. This petition for review followed.

## II.

When the BIA affirms the IJ's decision with its own opinion, we review both the BIA's and IJ's decisions. *Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018). The BIA's decisions on asylum and withholding of removal "are deemed conclusive if supported by reasonable, substantial and probative evidence on the record considered as a whole." *Velasquez v. Sessions*, 866 F.3d 188, 193 (4th Cir. 2017). We review factual findings for substantial evidence, meaning that we will not disturb factual findings unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Finally, we review legal conclusions de novo. *Velasquez*, 866 F.3d at 193.

5

A.

The Immigration and Nationality Act ("INA") permits the Attorney General to grant asylum to non-citizens who qualify as refugees. 8 U.S.C. § 1158(b)(1)(A). To qualify as a refugee, an applicant must demonstrate that (1) he "has a well-founded fear of persecution"; (2) his fear arises "on account of a protected ground";[1] and (3) the authorities in his home country are "unable or unwilling to control" the threat.[2] *Hernandez–Avalos v. Lynch*, 784 F.3d 944, 948–49 (4th Cir. 2015).

1.

If the applicant can establish that he suffered past persecution, he is "presumed to have a well-founded fear of future persecution." *Naizgi v. Gonzales*, 455 F.3d 484, 486 (4th Cir. 2006). Lopez argues that the IJ and BIA should have found that he suffered past persecution because he faced multiple death threats from the Hernandez family. We agree that Lopez established past persecution, so the IJ and BIA should have afforded him the rebuttable presumption of a well-founded fear of future persecution. On remand, the government will bear the burden to prove that Lopez could relocate within Honduras.

"[W]e have expressly held that 'the threat of death qualifies as persecution.'" *Hernandez-Avalos*, 784 F.3d at 949 (quoting *Crespin-Valladares v. Holder*, 632 F.3d 117, 126 (4th Cir. 2011)). In *Hernandez-Avalos*, we found that the applicant suffered past

---

[1] The IJ and BIA correctly held that Lopez's family qualifies as a particular social group and thus a protected ground. *See Crespin-Valladares*, 632 F.3d at 126.

[2] The IJ and BIA found Lopez ineligible for asylum based on the first and second asylum requirements and thus did not reach the third requirement.

persecution because she "credibly testified that she received death threats" from a gang in her home country. *Id.* Similarly, in *Crespin-Valladares*, we held that three death threats constituted past persecution. 632 F.3d at 126. We further explained that "parallel threats directed at" the applicant's family members "strengthened the objective reasonableness of his fear." *Id.*

In this case, the BIA's conclusion that Lopez did not suffer past persecution in Honduras "contravenes our express holding that the 'threat of death' qualifies as persecution." *Id.* (quoting *Li v. Gonzales*, 405 F.3d 171, 177 (4th Cir. 2005)). Lopez faced death threats from the Hernandez family on two occasions. First, Jorge and Felipe Hernandez, while armed, told Lopez that they wanted to kill him because they believed that Lopez intended to avenge his father's death. Second, other members of the Hernandez family fired shots at Lopez. Noting "the absence of physical harm" to Lopez, the BIA concluded that those threatening encounters with the Hernandez family did not qualify as past persecution. J.A. 3.

We have never adopted a requirement that an applicant suffer physical harm to show past persecution. To the contrary, we have repeatedly held "that the '*threat* of death' qualifies as persecution." *Crespin-Valladares*, 632 F.3d at 126 (emphasis added) (quoting *Li*, 405 F.3d at 177). The BIA's conclusion that Lopez did not suffer past persecution, therefore, "was . . . manifestly contrary to law."[3] *Id.* at 127.

---

[3] We reached the same conclusion in a recent decision. *See Tairou v. Whitaker*, No. 17-1404, at 10 (4th Cir. Nov. 30, 2018). In *Tairou*, we reiterated our holding that "the (Continued)

7

Moreover, members of Lopez's family suffered "parallel threats" that "strengthened the objective reasonableness of his fear." *Id.* at 126. Lopez's testimony reveals a pattern of violence from the Hernandez family directed at Lopez's family members. The Hernandez family attacked Lopez's uncle with a machete and amputated both of his arms, shot and killed Lopez's father, fired shots at his mother's house while family members were inside, and shot his brother and another uncle, leaving his uncle paralyzed. The violence that the Hernandez family inflicted upon Lopez's family members bolsters his claim of past persecution. *See Baharon v. Holder*, 588 F.3d 228, 232 (4th Cir. 2009) ("Violence or threats to one's close relatives is an important factor in deciding whether mistreatment sinks to the level of persecution.").

Because we hold that Lopez established past persecution, he is entitled to a presumption of a well-founded fear of future persecution.[4] *See id.* at 233 (citing 8 C.F.R. § 208.13(b)(1)). Accordingly, we remand to the BIA to reconsider the first asylum requirement using the proper presumption. *See id.* at 233–34 (citing *INS v. Ventura*, 537 U.S. 12, 16–17 (2002) (per curiam)).

---

threat of death alone constitutes persecution." *Id.* (holding that the BIA erred by finding that the applicant did not suffer past persecution despite multiple death threats).

[4] Here, the IJ found that Lopez failed to establish that he suffered past persecution, so the IJ placed the burden on Lopez to prove that he could not reasonably relocate within Honduras. Because we hold that Lopez has established past persecution, on remand the government will bear the burden to show that "it would be reasonable for [Lopez] to relocate." 8 C.F.R. § 1208.13(b)(3)(ii).

8

2.

Asylum applicants must also demonstrate that they suffered past persecution "on account of" a protected ground. 8 U.S.C. 1101(a)(42)(A). "Persecution occurs 'on account of' a protected ground if that ground serves as 'at least one central reason for' the feared persecution." *Hernandez-Avalos*, 784 F.3d at 949. "The protected ground need *not* 'be the central or even a dominant central reason for persecution,' but it must be more than 'an incidental, tangential, superficial, or subordinate reason.'" *Cordova v. Holder*, 759 F.3d 332, 337 (4th Cir. 2014) (quoting *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009)).

In this case, the IJ found that "the harm that [Lopez] suffer[ed] is as a result of a land dispute," and not "on account of his family membership." J.A. 141. On appeal, the BIA assumed without deciding "that the harm [Lopez] fears at the hands of the Hernandez family [was] on account of a cognizable particular social group, namely his nuclear family." J.A. 4. Because the BIA failed to adequately review whether Lopez suffered harm on account of his family membership, "the proper course . . . is to remand to the [BIA] for additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2002) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

B.

The INA prohibits the Attorney General from removing an alien if he "decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Withholding of removal "require[s] the applicant to establish a

9

'clear probability' of persecution, rather than the less stringent 'well-founded fear' of persecution that will suffice to make out an asylum claim." *Salgado-Sosa*, 882 F.3d at 456. Accordingly, "an applicant who is ineligible for asylum is necessarily ineligible for withholding of removal." *Velasquez*, 866 F.3d at 197 n.6.

Because the IJ and BIA held that Lopez did not qualify for asylum, they found that Lopez could not meet the higher standard for withholding of removal. If on remand the BIA concludes that Lopez is eligible for asylum, it should reconsider Lopez's withholding of removal claim. *See Hernandez-Avalos*, 784 F.3d at 954 n.11.

C.

To qualify for relief under the CAT, an applicant must show "both that it is 'more likely than not' that he . . . will be tortured if removed to the country in question and also that this torture will occur at the hands of public officials or with the government's consent or acquiescence." *Salgado-Sosa*, 882 F.3d at 457 n.1. Substantial evidence supports the BIA's finding that Lopez has not suffered torture and thus does not qualify for relief under the CAT. Accordingly, we deny Lopez's petition for review as to his CAT claim.

III.

For the foregoing reasons, we grant Lopez's petition for review as to his asylum and withholding of removal claims, deny the petition as to his claim for relief under the CAT, vacate the BIA's order, and remand to the BIA for further proceedings consistent with this opinion.

10

*PETITION FOR REVIEW GRANTED IN PART,
DENIED IN PART; VACATED AND REMANDED*