PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1597

WILDON MANFREDO AQUINO CORDOVA,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: May 13, 2014                    Decided: July 18, 2014

Before MOTZ, AGEE, and THACKER, Circuit Judges.

Petition for review granted and case remanded by published opinion. Judge Motz wrote the majority opinion, in which Judge Thacker joined. Judge Agee wrote a dissenting opinion.

**ARGUED**: Linda Anna Dominguez, L.A. DOMINGUEZ LAW, LLC, Baltimore, Maryland, for Petitioner. Anna Emily Nelson, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF**: Stuart F. Delery, Assistant Attorney General, Melissa Neiman-Kelting, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

DIANA GRIBBON MOTZ, Circuit Judge:

Wildon Manfredo Aquino Cordova ("Aquino"), a native and citizen of El Salvador, petitions for review of the final order of the Board of Immigration Appeals ("BIA"). For the reasons that follow, we grant Aquino's petition for review and remand the case to the BIA for further proceedings.

I.

In July 2010, Aquino entered the United States without inspection. Four months later, the Government served him with a Notice to Appear, charging him as an alien present in the United States without admission or parole pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Aquino conceded removability but sought protection through asylum, withholding of removal, and the Convention Against Torture. Following a hearing, the IJ issued an oral opinion denying Aquino's application for all relief, which the BIA affirmed. We set forth below the relevant evidence concerning Aquino's asylum application and then the procedural history of the case.

A.

Aquino testified before the Immigration Judge ("IJ") as follows. He first entered the United States illegally in May 2004, at the age of sixteen, and returned to El Salvador in February 2008 pursuant to an award of voluntary departure.

2

Between his 2008 return to El Salvador and his reentry into the United States in July 2010, gangs in El Salvador attacked Aquino four times.

In February 2008, shortly after his return to El Salvador, five members of the violent Mara Salvatrucha gang ("MS-13") accosted Aquino in his front yard. When Aquino attempted to flee to his house, the men tripped him, kicked him in the head and mouth, and beat him with a baseball bat. They threatened to kill Aquino if he did not join them or pay for their protection. He reported the incident to the police, but the police did nothing in response, telling him simply to stay inside of his house. He continued to receive threats from MS-13 members on a regular basis following this incident.

In September 2009, a member of the Mara 18 gang, a rival to MS-13, flashed a gun at Aquino and told him that he would die if he did not join Mara 18. Another Mara 18 gang member appeared, and the two men chased Aquino, shouting that he would die and allegedly shooting at him as he ran away. Aquino again reported this incident to the police, to no avail.

On May 12, 2010, Aquino unexpectedly encountered his cousin, Jorge Vidal, who, like Aquino, had recently returned from the United States. Vidal told Aquino that he feared for his life, but before he could explain why, two members of MS-13 approached him and Aquino, shouting, "[T]oday you will die."

3

Aquino maintains that the gang members shot at him and his cousin as they ran away. Aquino and Vidal found safety in a field, where Vidal told Aquino that Aquino was now in danger because he had been seen with Vidal. Vidal explained that he had joined Mara 18 and that MS-13 wanted to kill him for his involvement in the death of an MS-13 member. The MS-13 members eventually caught up with Vidal and Aquino. One gang member tried to choke Aquino, and Aquino escaped by hitting him in the stomach and fleeing the scene. After this attack, Aquino feared that MS-13 would kill him because of his kinship ties to Vidal, a member of Mara 18.

The final incident occurred eight days later. Aquino heard gun shots coming from the front of his house, and, peering out the window, he saw four members of MS-13 facing his home. He contends that he recognized two of them as the men who had pursued him and Vidal the week before. The men shouted, "[W]e know who you and your cousin [are]. We belong to the MS-13 gang, and now you are going to die." The men tried to open the locked door of Aquino's home, and, when unsuccessful, kicked and damaged the gate. They continued to yell threats and began shooting. The shooting assertedly lasted for approximately an hour. Aquino hid on the floor during the shooting. The gang members eventually left, but vowed to return until they killed Aquino. After this incident, Aquino resolved to flee El

Salvador and return to the United States.  Six weeks later, on July 2, 2010, while Aquino was en route to the United States, an MS-13 member shot and killed his cousin Vidal.

After the final two incidents, Aquino feared that he would be murdered if he remained in El Salvador.  He explained that "[s]ince my cousin was killed and he was in a gang, [the MS-13] thought that somehow I belonged to a gang, too, which is not true."  He believed that he would be targeted if he returned "because the villages are very small.  Everybody knows everybody else."  Aquino explained that the police would not be able to protect him and so he would not be safe anywhere in El Salvador.  Although he could live with his father in San Salvador, he believed that he would be in even greater danger there.  Aquino swore that he has never belonged to a gang and did not wish to join one.  He also testified that he was engaged to Karina Cruz, a United States citizen, that she was pregnant with his child, and that they planned to marry soon.[1]

Aquino presented documentary evidence consistent with his account.  This evidence included statements from Heidi Reely (his cousin living in the United States), Cruz (his then-fiancée), his mother, his sister, Vidal's mother, and a copy of Vidal's death certificate and coroner's report.

_____

[1] Aquino and Cruz have since married, and together have a son, who, like Cruz, is a United States citizen.

5

In addition, Aquino offered a report from the United States Agency for International Development, which stated that gangs in El Salvador dominate certain territories due to corruption. The report noted that "[t]he judiciary and police systems are saturated, and there are not enough personnel in these systems to manage the problem of gangs," and it identified San Salvador, where Aquino's father lived, as one of the "most violent departments in the country." Another report prepared by the Harvard Law School International Human Rights Clinic stated that individuals are often perceived as gang members simply because they are "young and male" or because they "live[] in a neighborhood known to be the territory of a certain gang." The report explained that:

> The police rarely, if ever, provide protection to presumed . . . gang members . . . . By contrast, the police themselves generally view these individuals as enemies rather than citizens whose rights they should protect. Indeed, [police] officers are thought to be complicit in the targeted killings and abuse of numerous members of this population.

Aquino also included the Department of State Human Rights Report on El Salvador, which describes how police there are at times complicit in gang activities.

At the end of the hearing, Aquino's counsel explained that Aquino was claiming membership in a "particular social group," for purposes of 8 U.S.C. § 1101(a)(42)(A), based on kinship ties to gang members, given that members of MS-13 had seen and

6

associated Aquino with his cousin Vidal, who was a member of Mara 18.

The IJ found Aquino's testimony "credible in part and not credible in part." The court found credible Aquino's testimony that gang members harassed and beat him. But the IJ did not credit two aspects of Aquino's testimony. First, the IJ found it "highly implausible" that gang members shot at Aquino three times at close range, given that he suffered no wound. Second, the IJ did not credit Aquino's testimony that, during the final incident at his home, he recognized two of the four men from the earlier incident with his cousin. The IJ reasoned that Aquino would not have been able to recognize these men because, at the time they were shooting and yelling that they were going to kill him, "he [wa]s lying on the floor."

The IJ characterized Aquino's proposed social group as "a person who is from El Salvador who came to the United States[,] returned to El Salvador and had problems with a gang, and the police did not help." This, the IJ concluded, did not qualify as a "particular social group" for purposes of 8 U.S.C. § 1101(a)(42)(A). The IJ found that Aquino had not suffered past persecution, and that Aquino's fear of future persecution, "although real," did not amount to "fear based on a reasonable probability of future persecution." The IJ then denied Aquino's

7

application for asylum, withholding of removal, and protection under the CAT, and ordered Aquino removed to El Salvador.

Aquino appealed the IJ's ruling to the BIA. With his appeal, Aquino submitted additional documentary evidence that he maintained was previously unavailable. These documents included evidence that one of his uncles, like his cousin, had been a member of Mara 18 and had been murdered by MS-13 in 2007.

The BIA dismissed Aquino's appeal in a three-page opinion. At the outset, the BIA noted that Aquino waived any claim for protection under the Convention Against Torture by failing to raise that claim on appeal.[2] The BIA then affirmed the IJ's denial of asylum and withholding of removal. The BIA concluded that it "agree[d] with the Immigration Judge that [Aquino's] purported social group of family members of persons who have been killed by rival gang members, as well as being threatened themselves for refusing to join a gang[], is not a cognizable social group." Alternatively, the BIA concluded that even if Aquino's family qualified as a particular social group, he had not demonstrated a nexus between this proposed social group and actual or feared persecution.

---

[2] Aquino now seeks to challenge the IJ's denial of his claim for protection under the Convention Against Torture. But by neglecting to raise this claim before the BIA, he has failed to exhaust his administrative remedies. We therefore lack jurisdiction to review this claim. See 8 U.S.C. § 1252(d)(1).

Because the BIA concluded that Aquino had failed to meet the lower burden of proof required for asylum, it held that he necessarily failed to meet the higher standard for eligibility for withholding of removal. See, e.g., Marynenka v. Holder, 592 F.3d 594, 600 (4th Cir. 2010).

Aquino timely petitioned for review.

II.

The Immigration and Nationality Act ("INA") authorizes the Attorney General to grant asylum to any applicant who proves eligibility for asylum. 8 U.S.C. § 1158(a)(1). An applicant can meet this burden by showing that he has suffered past persecution, or has a well-founded fear of future persecution, on account of a protected ground, such as membership in a "particular social group." Id. § 1101(a)(42)(A).

The statute does not define "particular social group." The BIA, however, has defined this term to include three criteria: "(1) its members share common, immutable characteristics, (2) the common characteristics give its members social visibility, and (3) the group is defined with sufficient particularity to delimit its membership." Martinez v. Holder, 740 F.3d 902, 910 (4th Cir. 2014) (quoting Lizama v. Holder, 629 F.3d 440, 447 (4th Cir. 2011)) (emphasis omitted).

9

"Persecution involves the infliction or threat of death, torture, or injury to one's person or freedom," on account of a protected ground. Qiao Hua Li v. Gonzales, 405 F.3d 171, 177 (4th Cir. 2005) (quotation marks omitted). Persecution "occurs 'on account of' a protected ground if that ground serves as 'at least one central reason for' the feared persecution." Crespin-Valladares v. Holder, 632 F.3d 117, 127 (4th Cir. 2011) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). The protected ground need not "be the central reason or even a dominant central reason for persecution," but it must be more than "an 'incidental, tangential, superficial, or subordinate' reason." Quinteros-Mendoza v. Holder, 556 F.3d 159, 164 (4th Cir. 2009) (quoting In re J-B-N-, 24 I. & N. Dec. 208, 214 (BIA 2007)).

When, as here, the BIA adopts and affirms the IJ's decision and supplements it with its own opinion, we review both decisions. Ai Hua Chen v. Holder, 742 F.3d 171, 177 (4th Cir. 2014). We review factual findings for substantial evidence, treating them as conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. at 178 (quoting 8 U.S.C. § 1252(b)(4)(B)). We review legal conclusions de novo. Crespin-Valladares, 632 F.3d at 124. We must uphold the BIA's decision unless it is "manifestly contrary to law and an abuse of discretion." Tassi v. Holder, 660 F.3d 710, 719 (4th Cir. 2011). The BIA abuses its discretion if it fails "to

10

offer a reasoned explanation for its decision, or if it distort[s] or disregard[s] important aspects of the applicant's claim." Id. We may not affirm the BIA's decision on any conceivable basis, but rather only if "the grounds upon which the agency acted . . . were those upon which its action can be sustained." Nken v. Holder, 585 F.3d 818, 822 (4th Cir. 2009) (quoting SEC v. Chenery Corp., 318 U.S. 80, 94 (1943) ("Chenery I")).[3]

The BIA provided two grounds for dismissing Aquino's asylum claim. First, the BIA affirmed the IJ's holding that Aquino had not demonstrated membership in a cognizable social group. Alternatively, the BIA concluded that, even if Aquino had established a cognizable social group, he failed to establish a nexus between that group and the death threats he received from

---

[3] A single BIA member issued the non-precedential opinion in this case. Accordingly, the BIA opinion is not entitled to Chevron deference; only Skidmore deference applies. See Martinez, 740 F.3d at 909-10. Under this standard, we may "rely on the agency's opinions as a 'body of experience and informed judgment' to which we may 'properly resort for guidance.'" Id. at 910 (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). But the extent of such deference "depends upon 'the thoroughness evident in [the BIA's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" Id. (alteration in original). As we explain within, in this case we do not find the BIA's reasoning thorough or persuasive.

11

MS-13. Aquino challenges both rulings, which we address in turn.[4]

## III.

Aquino maintains that MS-13 gang members targeted him in the past, and will target him in the future, because of his kinship ties to his cousin and uncle, both of whom MS-13 murdered on account of their membership in a rival gang. Citing to In re C-A-, 23 I. & N. Dec. 951 (BIA 2006), the BIA recognized "that family membership can constitute a particular social group." But the BIA then summarily affirmed the IJ's rejection of Aquino's proposed social group. The IJ, however, had improperly characterized Aquino's proposed social group as "a person who is from El Salvador who came to the United States[,] returned to El Salvador and had problems with a gang, and the police did not help." Thus, the IJ did not analyze the

---

[4] In addition, Aquino argues that the IJ clearly erred in finding not credible his testimony that he was shot at several times "at close range" and not wounded. Aquino did not testify that shots were fired at close range. Thus, the IJ appears to have premised this finding on a mischaracterization of the record. See Tassi, 660 F.3d at 719 (explaining that a court does not defer to factual findings "that are based on an inaccurate perception of the record"). But this error was harmless. See id. at 725. Neither the IJ nor the BIA relied on this finding as a ground for denying Aquino's claims.

12

family-based social group that Aquino actually proposed. This was legal error. See Crespin-Valladares, 632 F.3d at 125.

The BIA's order did not address the IJ's legal error, nor did it provide any reasoning to support its conclusion that Aquino's proposed social group, which is based upon family ties, is not cognizable. "It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive." Li Fang Lin v. Mukasey, 517 F.3d 685, 693 (4th Cir. 2008) (quoting SEC v. Chenery Corp., 332 U.S. 194, 196-97 (1947) ("Chenery II") (internal quotation marks omitted)).

Rather, the Supreme Court long ago instructed that "the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." Chenery I, 318 U.S. at 94. Accordingly, "when a BIA order does not demonstrate that the agency has considered an issue, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Nken, 585 F.3d at 822 (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).[5]

---

[5] The Government argues that remand is not necessary because existing case law forecloses Aquino's proposed social group. But the cases on which the Government relies involve asylum
(Continued)

Of course, no remand is necessary if the BIA correctly held that Aquino failed to establish a nexus between his proposed social group and the death threats he assertedly received from MS-13. Accordingly, we turn to the BIA's nexus holding.

IV.

The BIA held that Aquino's kinship ties to his cousin and uncle, who were gang members killed by a rival gang, did not constitute a central reason for the attacks Aquino suffered. The BIA provided two rationales for its nexus holding.

The BIA's primary rationale was that Aquino had not shown that his "<u>family</u> was uniquely or specially targeted by the criminal gang" (emphasis added). The BIA agreed with Aquino that "the death of his uncle and cousin is relevant to his case." But the BIA reasoned that Aquino "has not established that a central reason for the attack on his <u>family</u> was related to a protected ground" (emphasis added). In other words,

claims based only on instances of gang recruitment or extortion. <u>See, e.g.</u>, <u>Zelaya v. Holder</u>, 668 F.3d 159 (4th Cir. 2012); <u>In re S-E-G-</u>, 24 I. & N. Dec. 579 (BIA 2008). None addresses the situation at issue here, in which petitioner's family members, who belonged to one gang, were killed by a rival gang, and petitioner contends that this rival gang has targeted him because of his kinship ties. Indeed, in <u>Zelaya</u>, the Government's principal case, we expressly distinguished the proposed social group at issue from one involving kinship ties. 668 F.3d at 166.

14

because Aquino's family members were not targeted based on kinship ties, the BIA reasoned that Aquino could not have been targeted based on kinship ties.

We cannot affirm the BIA's nexus holding on this basis. The BIA certainly did not err in holding that Aquino's cousin and uncle were targeted because of their membership in a rival gang and not because of their kinship ties. But that holding does not provide a basis for concluding that MS-13 did not target Aquino on account of his kinship ties to his cousin and uncle. Indeed, in another sentence in its opinion, the BIA itself appears to have held that Aquino's familial relationship was in fact a central reason that MS-13 threatened to kill him. Thus, the BIA concluded that "the motivation of those who shot at [Aquino] and allegedly killed his [cousin and uncle] was . . . retaliation for [his cousin and uncle's] membership in a rival gang."

Moreover, that other members of Aquino's family may not have been "uniquely or specially targeted" by MS-13 does not undermine Aquino's own fear of persecution. As we explained in Crespin-Valladares, even though the petitioner's family members in El Salvador remained unharmed by the MS-13, this fact did not "undermine the reasonableness of [petitioner's] own fear of persecution, for [his] fear is premised on threats directed against him personally." 632 F.3d at 127 n.6.

15

The second reason the BIA provided for its nexus holding was that Aquino "was first targeted and harmed by [MS-13] gang members purely as an incident of recruitment" (emphasis added). But this rationale also fails to provide a basis for us to affirm the BIA's nexus holding. This is so because it ignores Aquino's testimony as to the latter two attacks by MS-13. The BIA committed no error in holding that Aquino's testimony as to the first two gang encounters shows nothing more than that both MS-13 and Mara 18 harassed him for purposes of recruitment or extortion. If these two incidents provided the sole basis for Aquino's claim, we would have no difficulty affirming the BIA.

But Aquino testified that, during the final two incidents in May 2010, he was "no longer just a target for rent money or for recruitment." Instead, in these attacks, MS-13 assertedly targeted him because it associated him with his cousin, a rival gang member. Thus, Aquino testified that: (1) on May 12, MS-13 assaulted and threatened to kill him and his cousin Vidal, and that Vidal's membership in Mara 18 triggered this attack, and (2) on May 20, MS-13 came to Aquino's house, identified him as Vidal's cousin, and vowed to return to Aquino's home until they killed him. Moreover, Aquino offered evidence that MS-13 subsequently killed his cousin, Vidal, and had previously killed his uncle, both of whom were members of Mara 18. We cannot agree with the Government's characterization of this evidence as

16

describing nothing more than the "general conditions of upheaval and unrest associated with gang violence." Govt's Br. 31 (internal quotation marks omitted). See Crespin-Valladares, 632 F.3d at 126 (rejecting the BIA's characterization of "the threat of death" as "mere threats and harassment").

"We are acutely aware that our job as a reviewing court is not to reweigh the evidence." Baharon v. Holder, 588 F.3d 228, 233 (4th Cir. 2009). But "[u]ltimately, in reviewing agency decisions in immigration matters, it is 'our responsibility to ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the fact finder,'" Tassi, 660 F.3d at 719 (quoting Baharon, 588 F.3d at 233).[6]

The BIA might have sound reasons for concluding that Aquino failed to establish the requisite nexus. But our review is limited to the reasoning the BIA actually provided. "Established precedent dictates that a court may not guess at what an agency meant to say, but must instead restrict itself to what the agency actually did say." Nken, 585 F.3d at 822. Here, the BIA's nexus analysis "fail[ed] to build a rational bridge between the record and the agency's legal conclusion."

---

[6] We note that the IJ did not credit Aquino's assertion that he recognized two of the four gang members during the final incident at his home. But the IJ made no further adverse credibility findings with respect to this incident. Indeed, the IJ did not discredit most of Aquino's testimony as to either of the May incidents.

17

Mengistu v. Ashcroft, 355 F.3d 1044, 1047 (7th. Cir. 2004). In such a case, "we are 'powerless to affirm . . . by substituting what [we] consider[] to be a more adequate or proper basis.'" Crespin-Valladares, 632 F.3d at 123 (quoting Chenery II, 332 U.S. at 196 (alterations in original)).

We recognize that the BIA stated generally that it "considered [Aquino's] explanations on appeal and d[id] not find them to be persuasive or to adequately reconcile the inconsistencies and implausibilities in the record." But this general statement does not provide an alternative basis for affirming the BIA's decision because "[w]e have no way to discern the extent to which [this conclusion] was based on an assessment of the record distinct from the flawed reasoning discussed above." Xiao Kui Lin v. Mukasey, 553 F.3d 217, 222 (2d Cir. 2009); see also Stoyanov v. INS, 172 F.3d 731, 735 (9th Cir. 1999) ("[W]e cannot affirm the BIA's decision on an alternative basis if the BIA describes that basis in mere boilerplate language.").

Thus, as with Aquino's proposed social group, the proper course with regard to nexus is to "remand to the agency for

additional investigation or explanation." <u>Ventura</u>, 537 U.S. at 16 (quotation marks omitted).[7]

V.

For the foregoing reasons, we grant Aquino's petition for review and remand the case to the BIA for proceedings consistent with this opinion.

<u>PETITION FOR REVIEW GRANTED</u><br><u>AND CASE REMANDED</u>

---

[7] Since the BIA dismissed Aquino's withholding of removal claim solely because it found that he failed to meet the lower burden of proof for asylum, we must also vacate the BIA's order dismissing his withholding of removal claim. <u>See, e.g.</u>, <u>Li Fang Lin</u>, 517 F.3d at 694.

AGEE, Circuit Judge, dissenting:

In my view, the majority opinion errs in holding that the Board of Immigration Appeals ("BIA") impermissibly applied the Immigration and Nationality Act ("INA") in reviewing Aquino's application for asylum and withholding of removal. Specifically, I conclude that the BIA did not err as a matter of law in its determination that Aquino's asserted fear does not bear a nexus to a protected ground and respectfully dissent.[*]

The Court must uphold the denial of Aquino's application for asylum unless the denial is "manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). "[A]dministrative findings of facts are conclusive unless any reasonable adjudicator would be compelled to conclude to the country." Id. § 1252(b)(4)(B). Whether Aquino established the requisite nexus between his proposed social group and the death threats he alleges is a question of law that the Court reviews de novo. Lin v. Mukasey, 517 F.3d 685, 691 (4th Cir. 2008). In so doing, however, the Court accords deference to the BIA's reasonable interpretation of the INA. Id. at 691–92; Chevron v. Nat'l Res. Defense Council, 467 U.S. 837 (1984). "Even in the

---

[*] I concur with the majority opinion's holding that Aquino failed to raise a Convention Against Torture claim before the BIA and thus failed to exhaust his administrative remedies. Under 8 U.S.C. § 1252(d)(1) we thus lack jurisdiction to review his claim.

absence of Chevron deference, we have concluded that we can rely on the agency's opinions as a 'body of experience and informed judgment' to which we may 'properly resort for guidance.'" Martinez v. Holder, 740 F.3d 902, 910 (4th Cir. 2014) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). Where, as here, the BIA adopts the Immigration Judge's ("IJ") decision and includes its own reasons for affirming, the Court reviews both decisions. Marynenka v. Holder, 592 F.3d 594, 600 (4th Cir. 2010).

To establish eligibility for discretionary relief of asylum, Aquino had the burden of showing that he has a "well-founded fear of persecution on account of . . . membership in a particular social group." 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13(a). Aquino faced a higher burden of proof to establish eligibility for withholding of removal – he must demonstrate "that it is more likely than not that [his] life or freedom would be threatened . . . because of [his] . . . membership in a particular social group." Gomis v. Holder, 571 F.3d 353, 359 (4th Cir. 2009) (citing 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b)(2)).

Aquino challenges the IJ and BIA's determinations that he had not demonstrated membership in a cognizable social group, and alternatively, even if he had, had failed to establish a nexus between that group and the death threats he received from

MS-13 members. The majority concludes that the IJ and BIA's determination that Aquino failed to establish the requisite nexus is based on an error of law. (Maj. Op. at 17–18.) Specifically, the majority opines that "the BIA's nexus analysis 'fail[ed] to build a rational bridge between the record and the agency's legal conclusion.'" (Maj. Op. at 17 (quoting Mengistu v. Ashcroft, 355 F.3d 1044, 1047 (7th Cir. 2004) (alteration in original).) I respectfully disagree.

At the outset, it is necessary to review the IJ and BIA's actual holdings. The IJ concluded that there was no "treatment of [Aquino] by gang members [that] amounted to past persecution" and "that [Aquino] ha[d] not been shown to be a member of any cognizable, readily identified group." (A.R. 157.) While accepting Aquino's testimony that he had been harassed and beaten up by gang members, the IJ found it highly implausible that Aquino had been shot at on multiple occasions at close range but not harmed. (A.R. 156.) The IJ further concluded that it did "not find that [Aquino] is a member of any particular social group . . . [and] that the fear, although real, of [Aquino] of gangs, that such fear amounts to a fear based on a reasonable possibility of future persecution." (A.R. 157.)

The BIA, in turn, agreed with the IJ's conclusions, first reasoning that "[c]onsidering the totality of the circumstances

22

before the Immigration Judge, we cannot conclude that his partial adverse credibility finding is clearly erroneous." (A.R. 4.) The BIA recognized that the IJ's credibility determination was "based on [Aquino's] inconsistent and implausible testimony, which the Immigration Judge may rely on in analyzing credibility, and making reasonable inferences among plausible possibilities and explanations for discrepancies in the record." (A.R. 4.) The BIA concluded that "[e]ven if the respondent's family could be characterized as a 'particular social group,' there is no evidence that this family was uniquely or specially targeted by the criminal gang, as opposed to being among the many individuals and families randomly targeted by violent gangs in El Salvador. Hence, the degree to which [Aquino] alleges a fear of persecution due to generalized violence, his fear does not bear a nexus to a protected ground." (A.R. 4.) Explaining that Aquino had "not established that a central reason for the attack on his family was related to a protected ground," the BIA noted that he "was first targeted and harmed by gang members purely as an incident of recruitment, and his refusal to join the MS-1[3] gang, factors which do not bear a nexus to a protected characteristic." (A.R. 5.) The BIA went on to conclude that Aquino had "not demonstrated that his relatives were in fact targeted because of their familial

23

relationship, much less that [Aquino] would be targeted on this basis." (A.R. 5.)

It was the province of the agency to weigh the totality of the evidence, including Aquino's credibility. In doing so, there was substantial evidence in the record by which a reasonable inference could be reached that Aquino would "not be targeted on that basis," i.e., his family relationship. The BIA clearly considered Aquino's claim that the nexus between he and his family was the basis for his persecution claim and rejected it as a failure of proof.

The BIA did not "fail to build a rational bridge between the record and the agency's legal conclusion[s]," (Maj. Op. at 17), but appropriately considered Aquino's arguments. The clear language of the BIA opinion shows not just that it considered whether Aquino's family was a target, but whether Aquino would also be a target because he was a member of that family; "much less that [Aquino] would be targeted on this basis," (A.R. 5). The BIA reviewed the IJ's factual findings for clear error – including the determination of credibility – and concluded that the IJ's factual findings were not clearly erroneous. Far from being an error of law, that is precisely the inquiry with which the IJ and BIA are charged with undertaking.

I conclude that the IJ and BIA's determinations, after conducting that proper legal inquiry, are not manifestly

24

contrary to the law or an abuse of discretion. Contrary to the majority's hypothesis, both the IJ and BIA offered a reasoned explanation for its conclusion that Aquino had failed to establish the requisite nexus between his asserted fear and a protected ground. They considered Aquino's proposed social group, along with his assertions of fear, and found that even if Aquino's family qualified as a particular social group in this case, he had not demonstrated a nexus between this proposed social group and actual or feared persecution by him. Because I am "acutely aware that our job as a reviewing court is not to reweigh the evidence," Baharon v. Holder, 588 F.3d 228, 233 (4th Cir. 2009), I would hold that their analysis was neither manifestly contrary to the law nor an abuse of discretion. I would deny Aquino's petition for review, thereby affirming the BIA's decision to deny Aquino's application for asylum and withholding of removal under the INA. I therefore respectfully dissent.