NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2518
_____

ANA CECILIA DOMINGUEZ,
                                        Petitioner
v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A094-760-527)
Immigration Judge: Honorable Frederic G. Leeds
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 3, 2016

Before:   JORDAN, GREENBERG, and SCIRICA, *Circuit Judges*.

(Filed: March 4, 2016)
_____

OPINION*
_____

_____

      * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Ana Cecilia Dominguez petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying her motion to reconsider whether to reopen her removal proceedings. We will deny the petition.

I.      **Background**

Dominguez, a native and citizen of El Salvador, entered the United States on January 17, 2000, as a nonimmigrant with permission to stay no longer than six months, which she overstayed.

On March 9, 2001, in response to a "devastating" series of earthquakes in El Salvador, the Attorney General of the United States designated nationals of El Salvador eligible for benefits under the Temporary Protected Status ("TPS") program, pursuant to 8 U.S.C. § 1254a(b)(1)(B). That meant that

> TPS beneficiaries [were] not required to leave the United States and [could] obtain work authorization. The granting of TPS does not lead to permanent resident status. When the Attorney General terminates a country's TPS designation, *beneficiaries return to the same immigration status they maintained before TPS* (unless that status had since expired or been terminated) or to any other status they may have been granted while registered for TPS.

Designation of El Salvador Under Temporary Protected Status Program, 66 Fed. Reg. 14,214 (Mar. 9, 2001) (emphasis added).

Dominguez repeatedly applied for TPS, and though she did receive a temporary employment authorization card, she was consistently denied TPS for failure to show that she met the eligibility requirements. After years of back-and-forth on her TPS

2

applications, she received a Notice to Appear in 2008, charging her with being removable under 8 U.S.C. § 1227(a)(1)(B), as a "nonimmigrant ... [who] remained in the United States for a time longer than permitted." (A.R. 1043.)

Shortly thereafter, in a hearing before an immigration judge ("IJ"), Dominguez, through counsel, conceded the removability charge and said that she would not be seeking asylum, withholding from removal, or relief under the Convention Against Torture – instead, she would again seek TPS. The IJ denied her claim for TPS for failure to prove continuous physical presence in this country, and that decision was affirmed by the BIA. Dominguez was not promptly removed, and over the next several years filed unsuccessful motions for the BIA to reconsider and reopen her proceedings. In each instance, she was represented by the same attorney.

The proceedings leading to the present petition for review began on August 1, 2014, when Dominguez, through new counsel, filed another motion to reopen, this time alleging ineffective assistance of counsel ("IAC") and eligibility for political asylum or withholding from removal. Her new claims were based on allegations that she was targeted for extortion by gangs in El Salvador after they murdered her brother in 1994, and that, seeking "revenge" against Dominguez, the gangs had murdered her daughter in 2008. (A.R. 135.) On November 26, 2014, the BIA denied the motion to reopen, and Dominguez filed a motion to reconsider that decision.

The BIA denied her motion to reconsider on May 22, 2015, and that is the decision before us now. The BIA gave several reasons for its ruling. First, Dominguez's IAC claim lacked the necessary allegation that her attorney's performance was defective,

3

because it was "silent as to any agreement that was entered into between [her] and [her] former counsel with respect to the actions to be taken by former counsel." (A.R. 3.) Moreover, the Board determined that Dominguez had not been diligent in presenting an IAC claim since she had known as early as July 2008, when she had a removal hearing, that her prior attorney asserted there was no viable claim for asylum, withholding of removal, or CAT relief. Second, on the merits of her application for asylum, Dominguez did not "show[] that the purported threats she received or the violence she fears is on account of a ground protected by the" Immigration and Naturalization Act ("INA"). (A.R. 3.) Nor did she provide "details surrounding the death of her daughter to support the suggestion that her daughter was killed by the same gangs who threatened [Dominguez] 15 years ago ... or that the [gangs] have any interest in [her] after these many years." (A.R. 3.) Third, she "failed to show that her untimely motion to reopen should have been equitably tolled." (A.R. 4.) Fourth, the documentation attached to her asylum application was merely general information about violence in El Salvador, and "there [was] nothing in the information that [she] submitted which relate[d] to ... her personal circumstances in a manner so as to establish prima facie eligibility for relief ... ." (A.R. 4.) Fifth, and finally, any request for "humanitarian relief" or "prosecutorial discretion" had to be made to the Department of Homeland Security, and not to the BIA. (A.R. 4.)

On June 19, 2015, Dominguez filed her petition for review of the BIA's May 22, 2015 order.

4

## II. Discussion

### A. Jurisdiction and Standard of Review

The BIA had jurisdiction under 8 C.F.R. § 1003.2. We exercise jurisdiction pursuant to 8 U.S.C. § 1252.

Both parties acknowledge our jurisdiction to review the BIA's May 22, 2015 decision denying Dominguez's motion to reconsider. The Attorney General contests, however, our jurisdiction to consider the BIA's November 26, 2014 decision denying Dominguez's motion to reopen. Of course, because Dominguez's June 19, 2015 petition for review was more than thirty days after the November 26, 2014 decision, the Attorney General is correct. *See* 8 U.S.C. § 1252(b)(1) (establishing the thirty-day deadline to petition for review); *cf. Stone v. I.N.S.*, 514 U.S. 386, 405-06 (1995) (holding that a motion to reconsider does not toll the time to petition for review of a removal order). But that does not mean that the issues associated with the motion to reopen are not in play. Given the administrative handling of the motion to reconsider, to some degree they are.

The procedural complexity of this case results in part from a dispute over whether Dominguez took the steps necessary to raise an IAC claim, as established in *Matter of Lozada*, 19 I. & N. Dec. 637, 639-40 (BIA 1988). Although, in its November 26, 2014 decision, the BIA did not consider Dominguez to have taken those steps, its May 22, 2015 decision changed course and acknowledged that she did present evidence "generally[] reflect[ing] compliance with *Matter of Lozada*." (A.R. 3.) Having satisfied itself that Dominguez had met the procedural requirements to bring her IAC claim, the BIA proceeded to the merits of the claim. After giving the merits of the IAC claim more

thorough treatment than had been given in the November 26 decision, the BIA denied reconsideration of its decision to not reopen the removal proceedings, emphasizing that Dominguez had failed to show the necessary prejudice to sustain an IAC claim. In reviewing the BIA's decision not to reconsider, we are therefore reviewing that prejudice determination.

We review the denial of motions to reconsider under a deferential standard of review:

> The denial of a motion to reconsider is [] reviewed for abuse of discretion. We will disturb the BIA's denial of a motion ... to reconsider only if it was arbitrary, irrational, or contrary to law. In ruling on questions of law, we review the BIA's legal conclusions *de novo*. We review factual determinations under a "substantial evidence" standard, which requires us to treat findings of fact as conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.

*Borges v. Gonzales*, 402 F.3d 398, 404 (3d Cir. 2005) (internal citations and quotation marks omitted). Moreover, "[m]otions for reopening of immigration proceedings are disfavored ... ." *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992). "Granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case." *I.N.S. v. Abudu*, 485 U.S. 94, 108 (1988) (quoting *I.N.S. v. Jong Ha Wang*, 450 U.S. 139, 143 n.5 (1981)).

We are therefore doubly deferential to the BIA's determination in this case. First, we review for abuse of discretion the BIA's decision not to reconsider. Second, the underlying decision to be reconsidered is a motion to reopen, which is itself disfavored.

6

### B.    Ineffective Assistance of Counsel Claim

The Attorney General defends the BIA's decision principally on the ground that Dominguez failed to make a *prima facie* showing that she is eligible for asylum, and that she therefore cannot sustain an IAC claim, since there is no evidence of prejudice from her former counsel's failure to seek asylum.[1]  We agree.

"To make out an ineffective-assistance-of-counsel claim, an alien must show that prior counsel's deficient performance prevented him from reasonably presenting his case and caused him substantial prejudice."  *Contreras v. Attorney General*, 665 F.3d 578, 584 (3d Cir. 2012) (internal quotation marks omitted).  "To prove prejudice, an alien must show that there is a 'reasonable likelihood' that the result of the removal proceedings would have been different had the error(s) not occurred."  *Id.* (quoting *Fadiga v. Attorney General*, 488 F.3d 142, 159 (3d Cir. 2007)).  In this case, then, Dominguez must establish that, had her original counsel sought asylum or withholding of removal, there is a "reasonable likelihood" that she would have prevailed.  She has failed to do that.[2]

---

[1] The Attorney General no longer contests that Dominguez met the procedural requirements to bring an IAC claim, and now argues that any question of whether she exercised the necessary diligence to bring an IAC claim is "ultimately irrelevant." (Answering Br. at 27.)  Instead, the Attorney General relies solely on the lack of a showing of prejudice on the merits of the IAC claim, so that the procedural issues considered by the BIA "are moot." (Answering Br. at 26)

[2] In addition to defending the BIA's prejudice determination on the merits, the Attorney General argues that Dominguez has waived any arguments about the merits of her IAC claim because she merely "summarily declares that she is eligible" for relief in her brief. (Answering Br. at 19.)  We agree that Dominguez's brief is not a model of clarity on this point, and that it focuses on the alleged incompetence of her former attorney and the BIA's supposed procedural failings without cogent argument for her actual eligibility for asylum.  She does argue, however, that she "was targeted by gangs in

7

"[A]n applicant [for asylum] has the burden of showing that [] persecution [she claims to have suffered] was *on account of* the applicant's race, religion, nationality, membership in a particular social group, or political opinion." *Lukwago v. Ashcroft*, 329 F.3d 157, 170 (3d Cir. 2003) (citing 8 C.F.R. § 208.13(b)(1)). In other words, Dominguez had to at least make out a *prima facie* case that she faced "violence ... on account of a ground protected by the [INA] ... ." (A.R. 3.) It was not enough for her show to show that she faced "acts of private violence"; she had to establish that she "was the victim of persecution, and not just the target of ordinary street violence." *Abdille v. Ashcroft*, 242 F.3d 477, 494-95 (3d Cir. 2001).

Dominguez presented the BIA with two forms of evidence that she was persecuted, both of which the BIA correctly found were unpersuasive. First, she alleged that she faced personal threats from gangs in El Salvador. She said that the threats started in 1994 when the gang killed her brother for his refusal to "engage in criminal acts ordered by them," and she was then a visible organizer of his funeral. (A.R. 58) Dominguez also alleged that, in 2008, her daughter was murdered by the gang "as revenge against" her (*i.e.*, Dominguez). (A.R. 65.) The BIA was correct, though, that she provided no details other than naked assertions that "the same gangs who threatened [Dominguez] 15 years ago" were responsible for her daughter's death or that such gangs "have any interest in [Dominguez] after these many years." (A.R. 3.) Nor did she

El Salvador," that her brother and daughter were killed by those gangs, and that such allegations warrant "the benefit of a full hearing." (Opening Br. at 20.) She should have provided more of a factual foundation for her asylum claim, but, because we can sustain the BIA's determination on the merits, we will not rely on waiver to deny her petition.

8

identify any particular social group that she was associated with and that supposedly was the basis for the gangs' threats against her, so she did not establish that "the purported threats she received ... [were] on account of a ground protected by the [INA]."[3]  (A.R. 3.)

Second, Dominguez appended several articles and reports to her application describing the general state of gang violence in El Salvador.  The BIA correctly concluded that "there is nothing in the information ... which relates to ... [Dominguez's] personal circumstances," and that general "[e]vidence of violence and civil unrest in El Salvador does not ... establish, without more, eligibility for the relief [Dominguez] now seeks."  (A.R. 4.)[4]

"The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief."  8 C.F.R. § 1003.2(a).  Here, Dominguez has failed to establish any *prima facie* case that she is eligible for asylum, and therefore she

---

[3] Dominguez did not cite any political opinion as the basis of persecution either. Reading her application for asylum most charitably and making inferences on her behalf, she perhaps suggests that her family is the "particular social group" being targeted.  But the supposed basis for her knowledge that she is still threatened by gangs in El Salvador is that members of such gangs "came to [her family's] house and told [her] mother and [her] daughters that if [Dominguez] ever come[s] back to El Salvador [the gangs] will kill [her]."  (A.R. 65.)  Dominguez's own evidence, if credited, therefore suggests that the gang's interest in her is personal and not related to her family, whom the gang left unharmed when delivering its threat.

[4] Dominguez also suggests that the BIA "ignore[ed] the facts proffered in support of her political asylum claim," (Opening Br. at 20), but – as the Attorney General noted in response – she "failed to specify which facts she believed the Board 'ignored'" (Answering Br. at 23).

9

cannot demonstrate that she was prejudiced by any ineffective assistance of counsel.[5] On

this record, it cannot be said that the BIA abused its discretion in denying her motion to

reconsider the earlier decision to not reopen her removal proceedings.

## C.      Request for an Evidentiary Hearing

Dominguez also asserts that she "is entitled to [an evidentiary] hearing on the

merits of [her] application ... without first having to establish prima facie eligibility for

the requested relief." (Opening Br. at 21 (emphasis removed).)  That is simply not so.

On at least one occasion, we have held that, when a *prima facie* case is made, the movant

"at least deserves a hearing," but that is contingent on the *prima facie* case being made in

the first place. *Guo v. Ashcroft*, 386 F.3d 556, 564 (3d Cir. 2004).  As we have just

stated, Dominguez has made no such *prima facie* case, so she is not entitled to a hearing.

In support of the contention that she is automatically entitled to a hearing,

Dominguez cites *Zhu v. Attorney General*, 744 F.3d 268 (3d Cir. 2014).  But *Zhu* does

not support her claim.[6]  In that case, we ruled that, when an alien moves to reopen

removal proceedings on the basis of "evidence to establish a material change in country

---

[5] "Since [the] standard [for withholding of removal] is more demanding than that governing eligibility for asylum, an alien who fails to qualify for asylum is necessarily ineligible for withholding of removal." *Valdiviezo-Galdamez v. Attorney General*, 663 F.3d 582, 591 (3d Cir. 2011).  Therefore, Dominguez's failure to make a *prima facie* case for asylum means she is also ineligible for withholding of removal.

[6] Dominguez also cites an out-of-circuit case, *Cordova v. Holder*, 759 F.3d 332 (4th Cir. 2014), to support her claimed entitlement to an evidentiary hearing, but that also provides no support for her claim.  In *Cordova*, the Fourth Circuit remanded to the BIA because it failed to properly analyze the particular social group proposed by the petitioner; the case says nothing about a right to an evidentiary hearing on demand. *See id.* at 338.

10

conditions," the BIA must "meaningfully consider[] the evidence and arguments" of the movant. *Id.* at 272. We determined that the BIA "did not meaningfully address many of the documents [the movant] presented," so we "remand[ed] to the BIA for a more thorough review and explanation." *Id.* at 279. In Dominguez's case, however, the record suggests that the BIA fully considered her evidentiary submissions and found them insufficient to make out a *prima facie* case for relief. We see no reason to disturb that decision.

**III.     Conclusion**

For the foregoing reasons, we will deny the petition for review.

11