NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3695
_____

JOSE MARTIN SISILIANO-LOPEZ,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                              Respondent
_____
On Petition for Review of a Decision of the Board of Immigration Appeals
(A205-999-196
Immigration Judge: Roxanne C. Hladylowycz
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 05, 2017
_____

Before: CHAGARES, GREENAWAY, JR., and VANASKIE *Circuit Judges*.

(Opinion Filed: October 11, 2017)

_____

OPINION[*]
_____

GREENAWAY, JR., *Circuit Judge*.

_____

    [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jose Martin Sisiliano-Lopez appeals the Board of Immigration Appeals' ("BIA") dismissal of his application for withholding of removal and asylum. Sisiliano-Lopez argues that the BIA and the Immigration Judge ("IJ") misapplied the "one central reason" standard in § 208 of the Immigration and Naturalization Act ("INA") when determining whether he was persecuted because of his membership in his nuclear family. He also contends that the BIA and IJ improperly relied on *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (BIA 2014) in deciding that individuals who resisted gang recruitment or gang activity did not constitute a "particular social group." Finally, Sisiliano-Lopez asserts that he should have been allowed to seek asylum pursuant to 8 U.S.C. § 1158. We will grant Sisiliano-Lopez's petition in part and deny the petition in part.

## I. Facts & Procedural Background

Sisiliano-Lopez is a native and citizen of El Salvador. On April 15, 2013, he illegally entered the United States and was found inadmissible pursuant to § 212(a)(7)(A)(i)(I) of the INA by the Department of Homeland Security ("DHS"). DHS issued a Notice to Appear, which stated that an asylum officer had found that Sisiliano-Lopez had demonstrated a credible fear of persecution. On May 20, 2013, an IJ ordered Sisiliano-Lopez removed to El Salvador, and he was removed on June 14, 2013. Following his removal, Sisiliano-Lopez illegally reentered the United States on or about August 17, 2013, and did so again on or about September 28, 2015. He was deported after each reentry. DHS issued a Notice of Intent/Decision to Reinstate Prior Order following each instance of illegal reentry. On October 28, 2015, an asylum officer

interviewed Sisiliano-Lopez and found him to have a reasonable fear of persecution or torture. Sisiliano-Lopez's matter was referred to an IJ on November 9, 2015. Two months later, in January 2016, Sisiliano-Lopez filed an Application for Withholding of Removal and Relief under the Convention Against Torture ("CAT").

In support of his application, Sisiliano-Lopez submitted declarations from himself and members of his family averring that he would be subject to threats, torture, and death from MS-13 if he were returned to El Salvador. Sisiliano-Lopez declared that he was in danger because he defended his sisters from threats and harassment from MS-13 gang members. Specifically, Sisiliano-Lopez explained that he had defended his older sister Maria Raquel from verbal abuse outside of a local bank by her husband Gilmer Rivera-Lobos ("Gilmer"), an alleged member of MS-13.[1] After the confrontation, Gilmer told Sisiliano-Lopez that he would regret becoming involved in the situation. Later, Sisiliano-Lopez stepped in to protect his younger sister Heydi, whom Gilmer had raped in the past, from being followed and harassed at a local church by Gilmer and other MS-13 members. Sisiliano-Lopez stated that as he led Heydi away from the church, he saw Gilmer "glaring" at him.

---

[1] Sisiliano-Lopez declared that when he returned to El Salvador after his first removal, he noticed that Gilmer was always accompanied by "at least two or three MS-13 gang members." He asserted that they were gang members because they would have tattoos and clothes associated with MS-13, and his friends told him they were gang members. Sisiliano-Lopez consequently suspected Gilmer was an MS-13 member because he "frequently had injuries on his face and arms, which made [him] suspect that this was related to gang activities or gang fights."

Sisiliano-Lopez also helped Maria Raquel obtain a divorce from Gilmer. After a hearing related to the divorce proceeding, Gilmer told Sisiliano-Lopez, "you don't think I have friends? All I need to do is make one phone call and they will do what I tell them to do." Gilmer also told Sisiliano-Lopez and Maria Raquel's divorce attorney that they would regret their involvement in the divorce. After the divorce was finalized, Sisiliano-Lopez began receiving threats from MS-13 members, some of whom were with Gilmer at the bank when he threatened Maria Raquel.

The threats that Sisiliano-Lopez received were demands from MS-13 members to drive them to various locations. Sisiliano-Lopez said that he knew that when MS-13 made such demands, they intended to use the target to help commit crimes and often killed the drivers for being witnesses to those crimes. Sisiliano-Lopez refused to help but feared the potentially fatal ramifications of his refusal. These threats occurred on multiple occasions, culminating in a group of MS-13 members pulling Sisiliano-Lopez out of his pickup truck, pressing a gun to his head, and threatening to kill him if he did not help transport them. He again refused. As a result of these encounters, Sisiliano-Lopez believed that he had only two options: help MS-13 commit crimes or risk death. At his withholding proceeding, Sisiliano-Lopez testified to the above and also stated that prior to his first illegal entry into the United States, MS-13 had beaten him for refusing to pay extortion.

The IJ found that Sisiliano-Lopez met his burden to establish his credibility. Next, the IJ examined Sisiliano-Lopez's claims for withholding of removal, which were based

4

on memberships in particular social groups—specifically, that of his nuclear family, and alternatively, a group comprised of individuals who resisted gang recruitment and gang activity. The IJ stated that in order for his claims to succeed, Sisiliano-Lopez had to show that he was targeted for persecution "primarily on account of" his membership in his proposed particular social groups.

After reviewing the evidence related to Sisiliano-Lopez's membership in his nuclear family, the IJ stated that it was not convinced that Sisiliano-Lopez was "more likely than not" targeted by Gilmer and/or MS-13 "because of" his status as a former family member of a gang member. Accordingly, the IJ denied Sisiliano-Lopez's application for withholding of removal based on his membership in his nuclear family.

Next, the IJ addressed Sisiliano-Lopez's alternative argument that he was targeted because of his membership in a particular social group comprised of individuals who resisted gang recruitment and activity. Relying on *Matter of M-E-V-G-*, the IJ concluded that individuals who resisted gang recruitment and activity are not a particular social group. The IJ also stated that even if such a group were considered a particular social group, the record did not support the conclusion that Sisiliano-Lopez was targeted "because of" his membership in that group. As a result, the IJ denied his application for withholding of removal on this ground as well.

Finally, the IJ found that Sisiliano-Lopez did not meet his burden of proof under the CAT and denied his application for CAT protection.

5

Sisiliano-Lopez appealed this decision, and a one-judge panel of the BIA affirmed the IJ. The BIA stated that neither the IJ's factual findings as to the motives underlying Sisiliano-Lopez's mistreatment nor the finding that he did not meet the "more likely than not" standard for persecution or torture were clearly erroneous. The BIA stated in a footnote that the IJ did not misapply the "one central reason" standard. The BIA also rejected Sisiliano-Lopez's argument that the IJ inappropriately applied BIA precedent in its determination of what constituted a particular social group. Lastly, the BIA rejected Sisiliano-Lopez's claims that he should have been permitted to apply for asylum despite the reinstatement of a previous order of removal.

This timely appeal followed.

## II.    Analysis[2]

"When . . . the BIA affirms an IJ's decision and adds analysis of its own, we review both the IJ's and the BIA's decisions." *Martinez v. Attorney Gen.*, 693 F.3d 408, 411 (3d Cir. 2012). "We affirm any findings of fact supported by substantial evidence and are bound by the administrative findings of fact unless a reasonable adjudicator would be compelled to arrive at a contrary conclusion." *Camara v. Attorney Gen.*, 580 F.3d 196, 201 (3d Cir. 2009) (internal quotation marks omitted). We review the BIA's legal conclusions *de novo*. *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004). Normally, we review the BIA's legal conclusions subject to the principles of *Chevron,*

---

[2] The BIA had jurisdiction over Sisiliano-Lopez's appeal pursuant to 8 C.F.R. § 208.31(e), and we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1), (4).

*U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). *Mahn v. Attorney Gen.*, 767 F.3d 170, 173 (3d Cir. 2014). "[H]owever, *Chevron* deference is inappropriate because we are asked to review an unpublished, non-precedential decision issued by a single BIA member." *Id.*

### A.

Sisiliano-Lopez contends that the BIA and the IJ incorrectly required him to establish that he was targeted for persecution "primarily on account" of his membership in his nuclear family. Sisiliano-Lopez further argues that the BIA erred when it affirmed the IJ's conclusion that he had not shown that he and his sisters were "more likely than not" targeted for persecution due to their familial ties.

An applicant for withholding of removal may not be removed if it is determined that "[his] life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "Proof of past persecution raises a rebuttable presumption that the [applicant]'s life or freedom would be threatened in the future." *Gonzalez-Posadas v. Attorney Gen.*, 781 F.3d 677, 684 (3d Cir. 2015). "To establish eligibility for withholding of removal based on membership in a particular social group, an applicant must establish both that the group itself is properly cognizable as a 'social group' within the meaning of the statute, and that his membership in the group is 'one central reason' why he was or will be targeted for persecution." *Id.* at 684–85. "Therefore, a key task for any [withholding] applicant is to show a sufficient 'nexus' between persecution and

7

one of the listed protected grounds." *Ndayshimiye v. Attorney Gen.*, 557 F.3d 124, 129 (3d Cir. 2009).[3]

When the IJ first began its analysis, it stated that Sisiliano-Lopez needed to establish that he was targeted for persecution "primarily on account of" his membership in his nuclear family. The IJ then rested its denial of Sisiliano-Lopez's application of withholding of removal under a different standard—his failure to establish that he was "more likely than not" targeted by Gilmer and/or MS-13 because of membership in his nuclear family, and the BIA affirmed on the same grounds. The use of the "primarily on account of" and the "more likely than not" standards was error.

In *Ndayshimiye*, we expressly stated that:

> [T]he phrase "*one* central reason" . . . demonstrates that the mixed-motives analysis should not depend on a hierarchy of motivations in which one is dominant and the rest are subordinate. This plain language indicates that a persecutor may have more than one central motivation for his or her actions; whether one of those central reasons is more or less important than another is irrelevant.

557 F.3d at 129 (citations omitted); *see also Bueso-Avila v. Holder*, 663 F.3d 934, 937 (7th Cir. 2011) ("[I]t is not necessary that the persecutor be motivated primarily on account of one of the grounds in the [INA]."). As such, the protected "ground may be a secondary (or tertiary, etc.) reason and still justify" withholding of removal. *Shaikh v.*

---

[3] The same "one central reason" standard for asylum applicants in Section 208(b)(1)(B)(i) of the INA, 8 U.S.C. § 1158(b)(1)(B)(i), applies to applicants seeking withholding of removal. *Matter of C-T-L-*, 25 I. & N. Dec. 341, 346 (BIA 2010); *see also Gonzalez-Posadas v. Attorney Gen.*, 781 F.3d 677, 685 n.6 (3d Cir. 2015) (adopting *Matter of C-T-L-*'s holding).

*Holder*, 702 F.3d 897, 902 (7th Cir. 2012) (citing *Ndayshimiye*, 557 F.3d at 129–31). The IJ's use of the "primarily on account of" standard to determine whether Sisiliano-Lopez was a target for persecution because of his membership in his nuclear family is precisely the "hierarchy of motivations" analysis that we disclaimed in *Ndayshimiye*.

Furthermore, it appears that the IJ confused the standard for establishing eligibility for withholding of removal based on membership in a particular social group with the standard for determining likelihood of future persecution. As mentioned above, the "one central reason" standard governs eligibility for withholding of removal based on membership in a particular social group. Once the Petitioner establishes that his persecution is on account of a protected ground, he must then "show that such persecution is 'more likely than not' to occur." *Gomez-Zuluaga v. Attorney Gen.*, 527 F.3d 330, 348 (3d Cir. 2008). Thus, the "more likely than not" standard is used to determine the likelihood of future persecution if the Petitioner is returned to his home country. *Sesay v. Attorney Gen.*, 787 F.3d 215, 219 (3d Cir. 2015). The IJ erred because it used the "more likely than not" standard to evaluate Sisiliano-Lopez's reason for past persecution. Taken together, the IJ and the BIA failed to engage in the proper "one central reason" analysis.

The IJ also rejected Sisiliano-Lopez's claims of persecution based on his membership in his nuclear family because no other members of Sisiliano-Lopez's immediate family besides Maria Raquel, Heydi, and his younger brother Alfredo reported

9

any problems with MS-13 or Gilmer.[4]  The IJ also expressed doubt that Maria Raquel was harassed because she was the former family member of a gang member.  To the IJ, this was evidence that Sisiliano-Lopez was not targeted because of his familial membership.  However, it is of no consequence that his family may not have been targeted.[5]  *See Cordova v. Holder*, 759 F.3d 332, 339 (4th Cir. 2014) ("Moreover, that other members of [Petitioner's] family may not have been 'uniquely or specially targeted' by MS–13 does not undermine [Petitioner's] own fear of persecution.").  Even though Gilmer or MS-13 may not have targeted other members of Sisiliano-Lopez's family, "this fact [does] not undermine the reasonableness of [his] own fear of persecution, for [his] fear is premised on threats directed against him personally."  *Id.* (internal quotation marks omitted).  As such, the IJ's focus on Sisiliano-Lopez's family's interactions with Gilmer and/or MS-13 does not indicate that Sisiliano-Lopez failed to establish a nexus between his proposed social group and his threat of persecution.

The Government argues that the IJ's analysis was not erroneous because it found the "one central reason" motivating Gilmer's actions was personal retribution rather than

---

[4] In support of his application, Sisiliano-Lopez submitted a declaration from his younger brother Alfredo.  Alfredo averred that at school MS-13 members had threatened to kill him if he did not give them money.  The next day, Gilmer, along with the same gang members told him that he and his family were going to die for what they had done.  Alfredo also testified that Gilmer told him to join MS-13 and that if he did not they were going to kill him.

[5] The IJ seems to have ignored that Sisiliano-Lopez's other sister Julia had problems with Gilmer.  Julia averred that Gilmer molested her during the time she lived with him and Maria Raquel.

Sisiliano-Lopez's familial ties. This argument fails for two reasons: First, this argument suggests that personal retribution was the primary reason for the threats against Sisiliano-Lopez rather than a central reason. As mentioned above, this is contrary to our "one central reason" analysis, which allows for multiple reasons for persecution so long as at least one is based on a protected ground. Second, the Government's argument avoids the fact that the IJ's analysis focused entirely on determining whether or not the Sisiliano-Lopez's familial status was the primary reason for Gilmer's actions. Nowhere in the IJ's opinion does it say that the threats Sisiliano-Lopez experienced from Gilmer were because of Gilmer's desire for personal retribution against his brother-in-law for interfering in his private life.

Because we find the BIA's affirmance of the IJ's nexus holding improper, we vacate and remand to the agency for analysis consistent with the "one central reason" standard.

**B.**

Next, Sisiliano-Lopez argues that the BIA and IJ improperly applied *M-E-V-G-* because its particularity and social distinction requirements are a departure from BIA precedent and therefore should not have been given *Chevron* deference.[6]

In *Valdiviezo-Galdamez v. Attorney General*, 663 F.3d 582 (3d Cir. 2011), we rejected the BIA's addition of "social visibility" and "particularity" to its definition of "particular social group." We determined that "social visibility" appeared to require "on-sight visibility," which we found inconsistent with prior BIA decisions and therefore not entitled to *Chevron* deference. *Valdiviezo-Galdamez*, 663 F.3d at 606, 608. We remanded the case to the BIA to clarify the elements needed to prove the existence of a particular social group. *Id.* at 608–09. On remand, the BIA explained that a "particular social group" must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014). The BIA stated that for a social group to meet the particularity prong it:

---

[6] "Agencies are not free, under *Chevron*, to generate erratic, irreconcilable interpretations of their governing statutes . . . Consistency over time and across subjects is a relevant factor [under *Chevron*] when deciding whether the agency's current interpretation is 'reasonable.'" *Valdiviezo-Galdamez v. Attorney Gen.*, 663 F.3d 582, 604 (3d Cir. 2011) (alteration in original). "Although an agency can change or adapt its policies, it acts arbitrarily if it departs from its established precedents without announcing a principled reason for the departure . . . . [I]f it departs from an announced rule without explanation or an avowed alteration, such action could be viewed as arbitrary, capricious, [or] an abuse of discretion." *Johnson v. Ashcroft*, 286 F.3d 696, 700 (3d Cir. 2002) (second alteration in original) (internal quotation marks omitted).

[M]ust be defined by characteristics that provide a clear benchmark for determining who falls within the group. It is critical that the terms used to describe the group have commonly accepted definitions in the society of which the group is a part. The group must also be discrete and have definable boundaries— it must not be amorphous, overbroad, diffuse, or subjective.

*Id.* at 239 (citations omitted). The BIA explained that "[t]o be socially distinct, a group need not be seen by society; rather, it must be perceived as a group by society. Society can consider persons to comprise a group without being able to identify the group's members on sight." *Id.* at 240 (citation omitted).

Here, the IJ found, and the BIA affirmed, that Sisiliano-Lopez's proposed group of "individuals who resist gang recruitment and gang activity" failed the social distinction prong. It stated that the proposed group lacked definable boundaries thus making a group that includes everyone who opposes gangs too vague and all-encompassing to be a "*particular* social group." In his petition, Sisiliano-Lopez challenges the IJ's reliance on *M-E-V-G-*'s social distinction and particularity requirements.

However, we do not need to decide this question because the IJ ruled, and the BIA affirmed, on another ground: Sisiliano-Lopez had not established a nexus between his membership in his proposed group and the persecution he suffered. In spite of this finding, Sisiliano-Lopez did not argue that there was a nexus between his persecution and his proposed particular social group either before the BIA or on this appeal. Establishing the existence of a nexus between persecution and one of the listed grounds of protection is a separate requirement from proving that a proposed group meets the requirements for being a particular social group. *See Gonzalez-Posadas*, 781 F.3d at 684–85. The IJ

13

explained that the record does not support Sisiliano-Lopez's contention that he was targeted because of his membership in a group of individuals who resist gang recruitment and gang activity. Although Sisiliano-Lopez challenged the IJ's decision that individuals resisting gang recruitment and activity is not a particular social group, he did not challenge the IJ's finding that he failed to demonstrate that his alleged persecution was "because of" his resistance to gang membership and gang activity. Sisiliano-Lopez does not dispute this ruling in his opening brief, and thus, has waived any challenge to the BIA's decision on that matter. *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Co.*, 26 F.3d 375, 398 (3d Cir. 1994).

## C.

Finally, while awaiting our decision in *Cazun v. Attorney General*, 856 F.3d 249 (3d Cir. 2017), Sisiliano-Lopez argued that he should be allowed to apply for asylum pursuant to the INA's asylum statute, 8 U.S.C. § 1158, and the reinstatement statute, 8 U.S.C. § 1231(a)(5). However, pursuant to our recent holding in *Cazun*, which was filed after Sisiliano's petition for review, his argument fails.

In *Cazun*, we gave "*Chevron* deference to the [BIA]'s reasonable statutory interpretation that aliens subject to reinstated removal orders are ineligible to apply for asylum." 856 F.3d at 251. Because Sisiliano-Lopez was subject to two reinstated removal orders, he is ineligible to apply for asylum, and the BIA's decision stands.[7]

---

[7] Sisiliano-Lopez also sought relief under the CAT, but does not appeal the IJ's denial of his CAT claims to the BIA. As a result, those claims are waived. *See*

14

### III. Conclusion

For the foregoing reasons, we will vacate and remand for the BIA to determine whether Sisiliano-Lopez's membership in his nuclear family was one central reason for his persecution. We will affirm the BIA's decision that Sisiliano-Lopez was not targeted for persecution because of his rejection of gang membership and gang activity. We will also affirm the BIA's decision that Sisiliano-Lopez is not eligible to apply for asylum.

---

*Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Co.*, 26 F.3d 375, 398 (3d Cir. 1994).